■ In the Matter of the TOWN OF BEDFORD, Respondent, v. VILLAGE OF MOUNT KISCO, Appellant; COUNTY OF WESTCHESTER, Intervenor-Respondent; and DOMINIC A. AMUSO et al., Intervenors-Appellants.— In a proceeding pursuant to section 452 of the Westchester County Administrative Code (L. 1948, ch. 852, as amd.) and article 78 of the CPLR to review and annul a zoning amendment of the appellant village, a municipality adjoining the petitioner municipality, the appeals are from a judgment of the Supreme Court, Westchester County, dated June 15, 1971, which granted the application.— Judgment affirmed, without costs. No opinion. Munder, Martuscello, Gulotta and Benjamin, JJ., concur; Hopkins, Acting P. J., dissents and votes to reverse and to dismiss the petition, with the following memorandum: This proceeding raises a fundamental issue in the law of zoning: by what standards shall a challenge of a municipality to the exercise of redistricting power by a neighboring municipality be determined? The Village of Mount Kisco lies partly in the Town of Bedford and partly in the Town of New Castle. In 1968 Mount Kisco amended its zoning ordinance by changing a parcel of 7.68 acres owned by appellants Amuso from a one-family "RRR" district to a multiple residence "R-6" district. The Amuso parcel lies in the northwest sector of Mount Kisco on the boundary between it and Bedford. The State has of course delegated zoning powers of virtually identical content to both towns and villages (Town Law, § 261; Village Law, § 175). The statutes provide that in each the delegated powers shall be exercised in accordance with "a comprehensive plan" (Town Law, § 263; Village Law, § 177). No municipality, almost as a matter of axiom, can impose its views of what constitutes proper zoning controls on another (cf. Anderson, Zoning Law and Practice in New York State, § 5.14).[1] The separate sovereignty within their respective spheres has been enforced by the refusal of the courts to allow an adjoining municipality to attack the use of zoning powers by its neighbor (cf. *Matter of Wood* v. *Freeman,* 43 Misc 2d 616, affd. 24 A D 2d 704; *Matter of Village of Russell Gardens* v. *Board of Zoning and Appeals of Town of North Hempstead,* 30 Misc 2d 392). There is, in short, no right of veto by one municipality against another. That is not to say that the municipality having authority should not consider the views of its neighbors, in making changes in the zoning of land abutting the boundary with another municipality.[2] Fair respect for the policy of its neighbor would dictate that consideration, even in the absence of a statutory command. In the County of Westchester, indeed, the towns and villages must give notice to an abutting municipality and listen to its views; in the event

1. Indeed, a town is prohibited from zoning that part of the town which is within a village (Town Law, § 262).

2. Notice of a proposed zoning change must be given to an adjoining municipality by both a town and village (Town Law, § 264; Village Law, § 178). Though the right to be heard is also granted to the adjoining municipality, the right of judicial review is expressly withheld. Similar provisions appear with respect to notice to, and consideration by, a county planning board in certain cases of the municipal exercise of zoning authority (General Municipal Law, §§ 239-l, 239-m, 239-n). But the statements of a county planning board are merely advisory (*Matter of We're Assoc. Co.* v. *Bear,* 35 A D 2d 846, affd. 28 N Y 2d 981).

that the latter disapproves the proposed change, "the municipal agency having jurisdiction shall not act contrary to such disapproval or recommendation except by the adoption of a resolution of the municipal agency, which action shall be subject to judicial review pursuant to the law providing for review of acts of such municipal agencies, commenced within thirty days of its adoption" (L. 1948, ch. 852 [Westchester County Administrative Code], as amd. by L. 1961, ch. 823 [adding new § 452]). That provision, we have held in this case, confers standing on a protesting municipality to institute judicial review of the action of a neighbor (*Matter of Town of Bedford* v. *Village of Mount Kisco*, 34 A D 2d 687, mot. for lv. to app. dsmd. 27 N Y 2d 725).[3] But standing to bring a proceeding merely means immunity from summary dismissal; and, in holding that Bedford could obtain review of the action of Mount Kisco in changing the zoning district of the Amuso parcel, we did not determine whether Bedford could attack the change because it was not in accordance with "a comprehensive plan" or was "spot zoning", as Special Term has found. No resident or owner of property in Mount Kisco, or, for that matter, in Bedford, has joined Bedford in seeking the annulment of Mount Kisco's action; and the County of Westchester, though a party, chose not to participate in the trial at Special Term. In my opinion, under these circumstances, it was incumbent on Bedford to show actual injury to itself as a municipality or to its residents by the rezoning of the Amuso parcel. It certainly is not enough that Bedford or its residents and land owners dislike the rezoning; nor would it be enough for Bedford to show that the rezoning differed from Bedford's treatment of its land on the boundary. It is almost inevitable that zoning districts will not be identical on opposite sides of the boundary between municipalities. Only by regional zoning, not here present, would the result of differing, and sometimes violently contrasting, zoning enactments of municipalities be avoided. I do not find on this record that Bedford established actual injury. Special Term determined that an increase in traffic on Bedford's roads would be experienced by the erection of apartment houses on the Amuso property. It may be expected that the increase in traffic would bring about the need for greater police activity or even for more extensive repairs and improvements of Bedford's roads than would be required if the property were not zoned for apartment use. I do not think, however, that these conditions constitute injury to Bedford, for they are the usual burdens which rest on any municipality growing out of the development of its neighbors. Bedford did show that its territory adjacent to the property was zoned for one-family residences. There was no proof, however, that the rezoning would depreciate the value of Bedford's land. Absent that proof, it cannot be said that Bedford's assessments or its tax revenues would be adversely affected. Without proof of injury, Bedford cannot act as a vindicator of zoning rights at large. Otherwise, any municipality could inquire into the exercise of zoning power by its neighbor, simply because it involved land on its border (cf. *Borough of Leonia* v. *Borough of Fort Lee*, 56 N. J. Super. 135; *Borough of Roselle Park* v. *Township of Union*, 113 N. J. Super. 87;

3. I do not reach the question, for it is not raised, whether the 1961 amendment to the Westchester County Administrative Code survived the amendment to section 239-m of the General Municipal Law (see *Matter of We're Assoc. Co.* v. *Bear*, 35 A D 2d 846, affd. 28 N Y 2d 981; *Matter of Town of Smithtown* v. *Howell*, 38 A D 2d 857).

*City of Greenbelt* v. *Jaeger,* 237 Md. 456).[4] Bedford, in brief, must show that it is damaged before it may intrude into the internal affairs of Mount Kisco. Apart from this substantive issue, I do not find that Bedford established that the zoning of the Amuso parcel was arbitrary. That Mount Kisco did not follow its 1958 " Comprehensive Development Plan " in 1968 is not fatal to its action, for, as conditions change, so much planning decisions. Nor does Mount Kisco's failure to follow its Planning Board's recommendation for denial render the zoning vulnerable, for the Planning Board had approved the rezoning only a year before. The record indicates, on the contrary, that specific findings were made by the Board of Trustees of Mount Kisco at the time which supported its action. It is apparent from the record that the Board of Trustees considered the welfare and economic stability of Mount Kisco as its first concern and there is nothing in the record that suggests that the action taken resulted from favoritism for the owners or any other extraneous influence. Bedford understandably differed from the conclusion reached, but that difference must be regarded as the necessary result of conflicting zoning policies that are confronted at the edge of every municipality. At the least, the judgment of Mount Kisco is debatable and the court may not join in the debate by setting aside Mount Kisco's judgment (cf. *Barry* v. *Town of Glenville,* 9 A D 2d 822, affd. 8 N Y 2d 1153; *Gerzof* v. *Town of Huntington,* 8 A D 2d 841, affd. 8 N Y 2d 788). I add a paragraph concerning the standard of a comprehensive plan as an essential to the exercise of zoning power. The standard comes into focus in two distinct cases; and the difference between them should be always recalled. The first case is where the landowner contends that the ordinance unreasonably restricts the use of his land. To determine whether his claim is just, it is fair to inquire whether other land in the vicinity is similarly zoned. The second case is where adjoining landowners contend that an individual landowner has been given favored treatment — " spot zoning ". To determine whether their claim is just, it is fair to inquire whether the land under scrutiny has different characteristics from the adjoining land. In this appeal, it is the latter case with which we are dealing; and, of course, we cannot ignore the obvious fact that Bedford's land on the boundary is different, if only because it lies in Bedford, subject to Bedford's zoning policies, and not in Mount Kisco, where it would be subject to varying policies. For these reasons, I vote to reverse and to dismiss the petition.

 ---

4. I do not consider that *Township of River Vale* v. *Town of Orangetown* (403 F. 2d 684) is relevant to the issue. That case decided that a New Jersey township might sue an abutting New York town on a claim that its Fourteenth Amendment rights would be violated because of a depreciation in value of its land by reason of rezoning. Here no such claim is made by Bedford; rather, its claim is that Mount Kisco did not abide by the State statute in adopting the rezoning of the property.